UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| VANILDA BERNARDO-RODRIGUES, ) <br> ) <br> Petitioner ) <br> ) <br> v. ) <br> ) <br> PATRICIA H. HYDE, Acting Field Office ) <br> Director of Enforcement and Removal ) <br> Operations, Boston Field Office, ) <br> Immigration and Customs Enforcement, ) <br> *et al.*, ) <br> ) <br> Respondent ) | No. 2:25-cv-00553-LEW |

## ORDER ON MOTION FOR ATTORNEY FEES

On November 14, 2025, the Court conditionally granted Petitioner's request for issuance of a writ of habeas corpus. As a result of the Court's Order, Respondents released Petitioner from their custody.

Petitioner now seeks an award of attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in the amount of $17,461.80. Mot. for Att'y Fees and Expenses (ECF No. 14). Respondents do not challenge Petitioner's financial eligibility for an EAJA award but argue that no award is available in any event because (A) Congress did not waive the sovereign immunity of the United States when it comes to habeas corpus fee petitions, and (B) the detention of Petitioner without the possibility of conditional release or bond pending removal was substantially justified. Opp'n (ECF No. 17). Respondents do not otherwise object concerning the number of hours worked, the hourly rate applied, or the dollar amount requested.

For the reasons below, Petitioner's Motion is granted.

A.	**Does the EAJA Apply to Habeas Corpus Petitions Arising from Immigration Detention?**

In the EAJA, Congress authorized awards of attorney fees and expenses in civil actions against the United States. 28 U.S.C. § 2412(d)(1)(A). The provision reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The provision amounts to a limited wavier of sovereign immunity designed "to eliminate the barriers that prohibit small business and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1005, at 9 (1979)). *See U.S. Sec. & Exch. Comm'n v. Lemelson*, 138 F.4th 618, 623 (1st Cir. 2025). Although there is a canon of construction that governs sovereign immunity waivers, which calls for waiver language to be construed strictly in favor of the United States, *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023), it does not displace other tools of construction, and is most commonly employed to prevent the imposition of liability on the sovereign when congressional intent is not reasonably apparent from the waiver language and, perhaps, the history and purpose of a statutory provision. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008).

Though governed by their own set of rules and procedures, habeas corpus petitions like the one filed in this case are docketed as civil matters. Through a civil habeas petition, an individual in custody on civil process challenges the lawfulness of their detention through an adversarial civil proceeding. Such a proceeding typically, as here, is brought to secure the vindication of rights due

to civil and administrative matters separately instituted by the Federal Government through agency action. In this light, an EAJA award is appropriate for civil habeas petitioners who prevail because, in reference to the requirements of the EAJA, their petitions institute on the Court's docket civil rather than criminal actions that do not sound in tort and seek judicial review of agency action. 28 U.S.C. § 2412(d)(1)(A). In effect, "[t]raditional interpretive tools can be used to understand that the term 'any civil action' under the EAJA includes immigration habeas proceedings." *Arias v. Choate*, No. 1:22-cv-02238, 2023 WL 4488890, at *3 (D. Colo. July 12, 2023) (following persuasive circuit precedent). *See also Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) (holding that a habeas proceeding challenging immigration detention constitutes a "civil action" under the EAJA); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (holding that the language of the EAJA encompassed civil habeas petition because petitioner's "claim was not merely a vindication of his own personal rights, but a challenge to a regulatory policy that had a sweeping effect"); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that a civil habeas petition presents a "hybrid" action rather than a "civil action"); *Obando-Segura v. Garland*, 999 F.3d 190, 194 (4th Cir. 2021) (same). Since these earlier circuit opinions, at least two circuits have joined the Second Circuit and Ninth Circuit in the view that the EAJA permits awards to civil habeas petitioners, though they maintain they have done so for different reasons. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (disavowing reliance on the EAJA's purpose and holding "to the text and context read against the backdrop of our legal history"); *Daley v. Ceja*, 158 F.4th 1152, 1155, 1162 (10th 2025) (holding that "any civil action" unambiguously encompasses habeas challenges to immigration detention, while also considering history and purpose).

While the foregoing string cite affords an exciting opportunity for the First Circuit[1] to weigh in on the matter at greater length, for my purposes I am satisfied that the proceedings on Petitioner's habeas petition amounted to both a civil action and a challenge to agency action.

B.  **Was the Respondents' Self-Avowed, Continued Reliance on *Matter of Yajure Hurtado* to Support Petitioner's Mandatory, Pre-Removal Detention Substantially Justified?**

Respondents' next objection is that the current administrative stance concerning the scope of pre-removal, mandatory detention is substantially justified by the language of the Immigration and Nationality Act (INA), specifically 8 U.S.C. § 1225(b)(2)(A).  In their opposition, they observe that there was no circuit guidance to resolve the substantive question that was in issue in this case and that their approach of mandatory, pre-removal detention follows a well-reasoned ruling of the Board of Immigration Appeals.  Opp'n at 10-13 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA Sept. 5, 2025)).  Through a supplemental filing, they also now can point to a recent circuit court opinion that supports their interpretation.  Notice (ECF No. 19) (citing *Buenrostro-Mendez*, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026)).

In her reply, Petitioner argues that Respondents' position was not substantially justified in her case since, "[b]y the time the [Respondents] chose to litigate this case on a §1225(b)(2) theory, the District of Maine had already flatly rejected [their] position in this case in a number of indistinguishable detention challenges." Reply at 6 (ECF No. 18).  Petitioner reminds me of my initial encounter with the section 1225 versus section 1226 controversy, in which I confessed my puzzlement over the matter, and that since that date the judges in this District have joined the overwhelming majority of other judges to address the matter by concluding that the best

---

[1] The First Circuit previously reviewed an EAJA ruling in the context of a civil habeas corpus matter without addressing whether such a proceeding qualifies for a fee award.  *See Saysana v. Gillen*, 614 F.3d 1, 2 (1st Cir. 2010).

construction of the INA is one that calls for discretionary detention under 8 U.S.C. § 1226(a) when it comes to noncitizens who are detained after they enter the United States unlawfully and without inspection.[2] *Id.* at 6-8.

The Petitioner offers a fair critique. The Respondents, as well as the Department of Justice that oversees the Board of Immigration Appeals, has opposed every challenge of this kind even after each district judge in this District found for petitioners in like cases, although in this District at least the Department has simply placed its flag in the ground to oppose relief and preserve the issue, with the understanding that it would lose on the merits based on district precedent. Simultaneously, Respondents have continued to carry out a program involving a number of within-District arrests to be followed by mandatory detention. Respondents and the DOJ have steadfastly pursued this program in the face of judicial declarations that their reading of the INA is wrong and that the consequences of their reading are likely unconstitutional. And yet, although district judges have overwhelmingly favored petitioners in these matters, in Maine and elsewhere, they have done so based in large part on a theory of statutory construction relying heavily on prior agency practice and an interpretive canon against surplusage rather than anything that could fairly be viewed as a plain language approach. *See, e.g., Chang Barrios v. Shepley*, No. 1:25-cv-00406, 2025 WL 2772579, at *8 (D. Me. Sept. 29, 2025); *Chogllo Chafla v. Scott*, --- F. Supp. 3d ---, No. 2:25-cv-00437, 00438, 00439, 2025 WL 2688541, at *6-7 (D. Me. Sept. 21, 2025). On the other side of the issue, a number of district judges have found that the most favored approach to statutory construction works a "perverse incentive" for noncitizens to enter the United States unlawfully, but more importantly ignores legislative history and intent as well as clearly-defined statutory terms. *See, e.g., Morales v. Noem*, --- F. Supp. 3d ---, No. 25-cv-62598, 2026 WL 236307, at *7-

---

[2] Petitioner entered the United States without admission or inspection at the border and has remained for an unspecified number of years. Pet. ¶¶ 1-2, 5.

8 (S.D. Fla. Jan. 29, 2026); *Garibay-Robledo v. Noem*, --- F. Supp. 3d ---, No. 25-cv-00177, 2026 WL 81679, at *6-8 (N.D. Tex. Jan. 9, 2026). The First Circuit, thus far, has remained silent on Respondents' new reading of the INA. On February 6, 2026, however, the Fifth Circuit issued an opinion on the matter, and it favors Respondents' construction. *Buenrostro-Mendez*, --- F.4th ---, 2026 WL 323330 (5th Cir.) (2-1).

To be substantially justified, the Respondents' position need only be one that a reasonable person could think is correct. *Michel*, 68 F.4th at 78. It is not determinative that I previously concluded that the merits favored Petitioner. *Id.* Moreover, "[w]hen the issue is a novel one with little to no precedent, courts have been hesitant to find the government's position not substantially justified." *Id.* If this were simply a matter of who has construed the INA with the greatest fidelity to canons of construction, I would find that Respondents' approach has been substantially justified and that, consequently, an EAJA award is unavailable to Petitioner. *See, e.g.*, *Lopez v. Trump*, No. 2:25-cv-00863, 2026 WL 114708, at *2 (D. Vt. Jan. 14, 2026); *but see Lozhkina v. Noem*, No. 6:26-cv-03001, 2026 WL 105024, at *5 (W.D. Mo. Jan. 14, 2026). However, in this Circuit a district judge's determination concerning pre-removal detention is freighted with starker due process implications based on existing law.[3] *See Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (2-1).

---

[3] Courts have found mandatory, pre-removal detention not only lawful but also constitutional in some cases and not in others based on statutory categories set out in the INA. For example, I denied a petitioner's habeas petition where 8 U.S.C. § 1182(d)(5)(A) indicated that he fell under section 1225(b)(2)'s mandatory detention provision. *A.M. v. Joyce*, No. 2:25-cv-00615, 2025 WL 3706922 (D. Me. Dec. 22, 2025). Judge Woodcock came to a similar conclusion in *Chanaguano Caiza v. Scott*, No. 1:25-cv-00500, 2025 WL 3013081, at *6-8 (D. Me. Oct. 28, 2025). The idea here is that the constitutionality of pre-removal detention depends on circumstances, typically dictated by categories set out in the INA, such that pre-removal detention of ordinary duration is not inherently suspect for due process purposes. *See, cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111 (2020) (holding that an applicant for admission detained at or near border "is not entitled to immediate release"), 140 ("[A]n alien [seeking admission] has only those rights regarding admission that Congress has provided by statute."); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that there is no implicit limitation on the duration of pre-removal detention authorized by Congress in the INA). Nonetheless, in *Hernandez-Lara*, the First Circuit applied the

In *Hernandez-Lara*, the First Circuit held that pre-removal detention of a noncitizen who evaded inspection at the border could not be justified unless the Government persuaded an immigration judge that the noncitizen posed a danger to the community or was likely to abscond if released.[4] *Id.* at 41.  The protections that the First Circuit determined due process required in *Hernandez-Lara*, in its words, apply "to a well-defined category of noncitizens (e.g., section 1226(a) detainees)." *Id*. at 45 (prescribing a categorical approach for similarly situated noncitizen detainees).  Like Hernandez-Lara, Petitioner entered the United States illegally by evading inspection at the border and thereafter took up residence.  Based on *Hernandez-Lara*, the preexisting law in this Circuit required Respondents to afford a noncitizen like Petitioner access to a discretionary detention regime *on due process grounds*.  In other words, in this Circuit, Respondents' reliance on *Hurtado* has always been in tension with the teaching of *Hernandez-Lara*; it has never involved an attempt to simply take a new administrative approach to detention in a legal vacuum.

Based on the *Hernandez-Lara* lodestone, I conclude that Respondents' approach to the pre-removal detention of noncitizens like Petitioner has not been substantially justified within this Circuit.  Understanding that no district judge in this District agreed with their proposed statutory work around—something the Government has repeatedly acknowledged in this and similar cases—Respondents should have conformed to the requirements of *Hernandez-Lara* for this

---

*Mathews v. Eldridge* due process factors to conclude that a detention hearing was required by the Fifth Amendment for a whole category of noncitizens who are similar to Petitioner insofar as they entered the United States without inspection and have remained for a period of years.  10 F.4th at 27-34 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Of course, the *Hernandez-Lara* Court did not have before it the statutory construction arguments that have informed this and other recent cases like it, and the parties in *Hernandez-Lara* agreed that § 1226(a) was the operative provision, but the Court's holding still stands as an emphatic due process precedent that needed to be overcome rather than ignored.

[4] The *Hernandez-Lara* Court did not prescribe a timeline in which to hold the required bond/detention-redetermination hearing.  10 F.4th at 25 & n.2.

category of noncitizen, pending the outcome of appeals in its forerunner cases, and not carried on in every case as though *Hernandez-Lara*'s categorical due process requirements were effectively inconsequential to its immigration enforcement program within the First Circuit.

## CONCLUSION

For the reasons set forth above, Petitioner's Motion for Attorney Fees and Expenses (ECF No. 14) is GRANTED in the amount of $17,461.80.

SO ORDERED.

Dated this 10th day of February, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge
